1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6          OAKLAND DIVISION

7

8    RAUL NUNO,                              Case No.  11-02446 SBA (PR)

9              Petitioner,

10    v.                                     **ORDER DENYING PETITION FOR
                                            WRIT OF HABEAS CORPUS**
11    DAVE DAVEY, Acting Warden,[1]

12              Respondent.

13

14

15   I.    **INTRODUCTION**

16         Petitioner Raul Nuno was charged in the Santa Clara County Superior Court with

17   two counts of aggravated sexual assault of a child under 14 by force, violence, duress,

18   menace and fear of immediate and unlawful bodily injury (oral copulation), Cal. Pen. Code

19   §§ 269, 288(a); and three counts of lewd or lascivious acts on a child by force, violence,

20   duress, menace, and fear, id. § 288(b)(1).  The information further alleged that Petitioner

21   had a prior rape conviction.  See id. §§ 667.61(a),(d); 667(b)-(i); 1170.12.

22         Prior to trial, the trial court ruled that evidence of Petitioner's prior sexual conduct

23   was admissible pursuant to California Evidence Code § 1108.  Section 1108 provides an

24   exception in sex offense cases to the general inadmissibility of character trait evidence

25   under California Evidence Code § 1101.  At trial, the trial court rejected the defense's

26   _____

27         [1] Dave Davey, the current acting warden of the prison where Petitioner is
     incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal
28   Rules of Civil Procedure.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

motion to exclude a prosecution expert's testimony on Child Sexual Abuse Accommodation Syndrome ("CSAAS")[2] evidence. A jury convicted Petitioner on all counts. In a separate court trial, the trial court found true the prior conviction allegation. The trial court sentenced Petitioner to state prison for a term of 260 years to life.

On March 16, 2010, the California Court of Appeal affirmed the conviction. Answer, Ex. 6. On June 9, 2010, the California Supreme Court denied review. Answer, Ex. 8.

This matter is now before the Court for consideration of Petitioner's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. Dkts. 1, 2. Petitioner asserts that the trial court erred in its admission of: (1) evidence of his prior sexual conduct; and (2) expert testimony regarding CSAAS. Dkt. 2 at 9, 27. Additionally, Petitioner claims the combined admission of propensity and CSAAS evidence unfairly deprived him of his constitutional right to present a complete defense. Id. at 35.

Upon reviewing the petition, the Court issued an order to show cause, in response to which Respondent filed an answer. Dkt. 7, 10. Petitioner filed a traverse. Dkt. 14. For the reasons discussed below, the petition is DENIED as to all claims.

## I.     BACKGROUND

The following facts are taken from the opinion of the California Court of Appeal:

> The charges stem from incidents related to a single victim, D., who was born in January 1995, and was 12-years-old at the time of trial. Defendant married Cindy, D.'s stepfather Fernando's sister. D. considered Cindy and defendant to be her aunt and uncle. Cindy and Fernando's parents, Manuel and Dolores, lived in a home in San Jose, and spent a great amount of time taking care of D. Manuel would pick D. up from school on a regular basis, and would look after her until Fernando could pick her up.
>
> At the time D. reported the sexual abuse in 2006, Cindy and defendant lived in the home with Manuel and Dolores.

---

[2] CSAAS "describes various emotional stages, experienced by sexually abused children, that may explain their sometimes piecemeal and contradictory manner of disclosing abuse." Brodit v. Cambra, 350 F.3d 985, 991 (9th Cir. 2003).

Defendant was often home in the afternoons when D. was in the house. Although Manuel was in charge of D.'s care in the afternoons, he was blind in one eye, diabetic and suffered from bone disease that affected his ability to stand. On many occasions when Fernando would come to pick up D., Manuel would be taking a nap. Although Fernando would find defendant home in the house with D., he considered defendant a trusted family member who would not harm D.

On April 11, 2006, D. told her mother that "[defendant] is sexually harassing me." D. cried as she told her mother that defendant had touched her in a sexual way. D. was afraid to tell her mother about the abuse, but she did anyway because she did not want defendant to touch her one-year-old sister the way he had touched her. At the time, D. was worried that her mother and Cindy would be mad at her if she told about defendant.

D.'s mother told Fernando about the abuse, and he became angry. Fernando then took D. to Manuel and Dolores's house, where D. told Cindy about the abuse. Cindy called the police, and D. then told the police about the abuse. The police went to defendant's job and arrested him there. Defendant never came home.

D. reported that she was 8-years-old and in third grade the first time defendant touched her in a sexual way. Defendant would touch her almost every day after school until she was 11 and had almost finished the fifth grade. Defendant touched the skin on her chest, butt and vagina, and his hands moved when he touched D.'s vagina. Defendant also put his mouth on D.'s vagina and made D. touch his penis with her hand. Defendant made D. get on her knees and put her mouth on his penis. Defendant held her head and moved his penis back and forth in her mouth.

D. did not tell anyone about the abuse, because she was afraid each time defendant touched her. Defendant told D. not to tell anyone about the touching, and he gave her money and gifts so she would keep quiet. D was afraid to tell her parents where the money and the gifts came from.

At one point before telling her mother, D. told her 10-year-old cousin R. about the sexual abuse. D. said "[defendant] touches me." D. made R. "pinky promise" not to tell anyone.

*Prior Conduct*

Evidence of defendant's prior sexual conduct with four different victims was introduced at trial.

1

2

3

4

***Victim J.***

Defendant met J. at their church.  The two began a sexual relationship when defendant was 19 and J. was 14.  When J. was 16-years-old, she and defendant had a daughter together.  J. and defendant ended their relationship.

***Victim S.***

On September 30, 1995, when J. was 18-years-old and a college student, defendant came to her home to visit their daughter.  J. was at work at the time.  J.'s 16-year-old sister, S., was also at work, and she called home for a ride from work around 9:30 p.m.  Defendant answered the phone and agreed to pick her up and drive her home.  S. considered defendant like a member of the family and trusted him like a brother.

There was no one there when S. and defendant arrived at S.'s home.  S. asked defendant if she could borrow money from him, and he responded by asking her to kiss flash him.  Defendant offered S. $20 to lift her skirt.  S. refused and walked away, but defendant followed her around the house.

S. decided to go to bed, and when she came out of the bathroom, defendant was lying on her bed.  S. asked defendant to leave, but he would not, so S. went to J.'s room to sleep.  Defendant followed her to J.'s room, so S. went back to her own room and went to bed.

S. woke up during the night to find defendant on top of her.  Defendant had S. pinned down by the weight of his body.  S. was shocked and afraid and did not call out for help.  Defendant raped S., and told her not to tell anyone about it.  Defendant also told S. that if J. found out, she would be made [sic] at S.  When defendant left, he gave S. $100.  S. did not tell anyone about the rape that night.

The following day, on October 1, 1995, J. found a note from defendant on the windshield of her car.  In the note, defendant apologized for hurting J.'s family and hoped "[S.] will be okay."

Two days after the rape, S. told the bishop in her church that defendant had raped her.  The bishop told S.'s family.

Defendant called J. a few times in October to talk about what happened with S.  The San Jose Police Detective handling S.'s case asked J. to tape-record a conversation with defendant.  During the conversation, J. asked defendant why he did what he did.  Defendant replied that he was weak and had "fall[en] into temptation."

***Victim L.***

Defendant met L. during a school field trip when he was 18-years-old and she was an 11-year-old sixth grader.  Defendant was serving as a chaperone for his younger brother P. on the field trip.  After the field trip, defendant wrote a note to L., telling her he thought she was cute, and he asked his brother P. to give L. the note.  L. was very excited to have the attention of any older man, and she wrote a letter to defendant telling him she thought he was cute.  The two exchanged letters through P. for a period of time.  Defendant picked L. up from school a few times, and on two or three occasions, the two spent time together in L.'s home when her parents were not there.  The two French-kissed in her room and the living room of her home.  Defendant treated L. well and gave her a bracelet for Christmas that said "Someone Special."  After defendant gave L. the bracelet, L. kissed defendant to thank him, and he put his hand on her chest to feel her heartbeat.

L. stopped seeing defendant when she learned he had another girlfriend named B., who was a classmate of L.'s in middle school.

***Victim B.***

Defendant began a relationship with B. when she was 13.  He would drive B. to school every day, and they would French-kiss.  Eventually, they began to have a sexual relationship when B. was 15-years-old.  B. had a son she named Raul Jr., but defendant did not acknowledge that he was the father of the child.

***Defense at Trial***

Defendant denied that he ever sexually molested D., and testified on his own behalf at trial.  Defendant admitted his sexual relationship with B., and J., however, he denied that he raped S., and stated that their sexual encounter was consensual.  Defendant also admitted to dating L.

Defendant testified that between September 2002 and September 2003, he worked for Rosendin Electric at various job sites.  His hours at the time were from 7:00 a.m. to 3:30 p.m., and depending on traffic, he would arrive home to the house in San Jose between 4:15 and 4:30 p.m.  When defendant arrived home, his in-laws Dolores and Manuel were home, as well as his nieces D. and A.  Defendant testified that D. was not always there when he arrived home, but that she was there around four times per week.  Defendant stated that he was never in the house alone with just D. and Manuel.

In 2005, defendant left Rosendin for a job at Redwood City

5

Electric.  There was no gap in employment, and his hours remained the same.  Defendant always arrived home at 4:30, after Dolores and all of her grandchildren had arrived home.

In 2006, defendant worked at Kifer Technology in Sunnyvale and did not get home until 5:30 or 6:00 p.m. each day.

Defendant testified that he never touched D. in a sexually inappropriate way, and that he was never alone with her. Defendant gave her a dollar for ice cream, and gifts for Christmas and her birthday, but not at any other time. Defendant believed D. accused him of molestation because she watched an Oprah episode about sexual harassment.

In addition to his own testimony, [defendant] offered the testimony of Dolores and Manuel, and defendant's stepson, Ramon, all of who[m] lived in the house in San Jose with defendant, where D. would come for childcare after school. All three witnesses testified to varying degrees that defendant was rarely, if ever alone with D. in the house, and that they did not believe that defendant molested D.  In particular, Dolores testified that she did not believe D., because if it were true, D. would have told someone about the molestation.  Because Dolores could not figure out how the molestation could have happened, "therefore it [did not] happen."  In addition, Dolores testified that she was certain defendant was never home on a weekday afternoon for any reason between 2003 and 2005. Finally, Manuel testified that he never left D.'s side for a moment when he babysat her after school.

Both defendant's sister, and a co-worker testified on defendant's behalf at trial.  They both stated that despite defendant's history of having sex with underage girls, and his rape conviction, they did not believe he was the kind of person who would molest D.

Answer, Ex. 6 at 2-7.

## II.    **LEGAL STANDARD**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the proceeding "resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1) (emphasis added).

A state court decision is "contrary to" clearly established federal law "if the state

6

court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted). Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Habeas petitioners bear the burden of showing that a state court's decision applied some Supreme Court precedent in an objectively unreasonable manner. Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

Habeas relief is warranted only if the constitutional error at issue is structural error or had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)). Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual" prejudice. Brecht, 507 U.S. at 637.

On federal habeas review, the district court reviews the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision. See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991). In the absence of a decision from the highest state court, the Court "looks through" to the "last reasoned decision" addressing the particular claim. Id.; Shackleford v. Hubbard, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000). Here, the California Court of Appeal's March 16, 2010 decision is the last reasoned decision to address Petitioner's claims.

## III.   DISCUSSION

### A.   ADMISSION OF PRIOR SEXUAL CONDUCT

Prior to trial, the prosecution sought to introduce evidence of the following prior sexual conduct by Petitioner: (1) the rape of S.; (2) unlawful sexual intercourse with a minor, J. (3) unlawful sexual intercourse with a minor, B.; (4) oral copulation with a

minor, B.; (5) annoyance of a child, B.; and (6) uncharged sexual conduct with L.  Answer, Ex. 1 Clerk's Transcript ("CT") 119-133.  The trial court conducted a hearing (at which a defense expert testified) and ruled that the aforementioned evidence was admissible.  Answer, Ex. 2, vol. 1 (Reporter's Transcript "RT" 3/8/2007 re Motions In Limine) 3-67.  The trial court found the evidence more probative than prejudicial because the prior offenses were similar to the present crimes, not too remote, and relevant to the issue of Petitioner's "predisposition to commit the crimes as alleged in the information."  RT 67.

The evidence specified above was admitted pursuant to California Evidence Code § 1108, which provides, in pertinent part:  "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by section 1101, if the evidence is not inadmissible pursuant to section 352."[3]  Cal. Evid. Code § 1108(a).  Evidence Code § 1108 "gives courts discretion to 'exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'"  People v. Falsetta, 21 Cal. 4th 903, 916 (1999) (quoting in part Cal. Evid. Code § 352).

Petitioner first contends that the evidence was wrongfully admitted because § 1108 itself is unconstitutional.  In the alternative, Petitioner argues that the prior act evidence was more prejudicial than probative and should have therefore been excluded under § 352.

### 1.    State Court Decision

The state appellate court upheld the constitutionality of § 1108.  Answer, Ex. 6 at 8-9.  It also concluded that consistent with Evidence Code §§ 352 and 1108, the evidence was properly admitted and relevant.  Id. at 10-11.  The prior conduct involved sexual contact with underage female victims, all of whom were relatively close to Petitioner's age

---

[3] Evidence Code § 352 states:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

United States District Court
Northern District of California

at the time of the incident.  Meanwhile, the present offenses occurred between a 30-year-old man and an 8-year-old girl.  The state appellate court noted that Petitioner had argued that there was a "world of difference" between the prior conduct and the current offenses because of the significant age differences.  Id. at 11.  However, the court rejected Petitioner's argument as follows:

> Here, the trial court fulfilled its responsibilities under section 352 to weigh the probative value of the prior sex offense evidence against its prejudicial effect.  It is apparent from the record that the trial court considered the reliability and probative value of the proffered charged and uncharged sex offense evidence against its obviously prejudicial effect before determining that the evidence was admissible.  Defendant has not shown that the trial court exercised its discretion in "an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."  People v. Rodriguez, 20 Cal. 4th at 9-10.[4]
>
> For these reasons, we conclude that the trial court did not abuse its discretion in admitting the evidence of defendant's sex offenses under section 1108.

Id. (footnote added).

### 2.   Federal Authority

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).  In order to obtain habeas relief on the basis of an alleged evidentiary error, Petitioner must show that the error was one of constitutional dimension and that it was not harmless under Brecht.  Petitioner must demonstrate that the error had "'a substantial and injurious effect' on the verdict."  Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting Brecht, 507 U.S. at 623).

To date, the Supreme Court has left open the question whether a state law allowing admission of propensity evidence is unconstitutional.  See Estelle v. McGuire, 502 U.S.

---

[4] People v. Rodriguez, 20 Cal. 4th 1 (1999).

United States District Court
Northern District of California

62, 75 n.5 (1991) ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA. Alberni v. McDaniel, 458 F.4d 860, 866-67 (9th Cir. 2006); accord Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008).

Propensity evidence is generally admissible in child molestation cases under Federal Rule of Evidence ("FRE") 414.[5] See United States v. LeMay, 260 F.3d 1018, 1024-25 (9th Cir. 2001). In LeMay, the court held that FRE 414 is not unconstitutional because it is subject to FRE 403, which instructs judges to exclude any such evidence that is more prejudicial than probative. Id. at 1026-27. The court reasoned that this balancing process eliminates any due process concerns from FRE 414, stating that "[a]s long as the protections of [FRE] 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded." Id. at 1026. Any unfairness resulting from the admission of propensity evidence is thereby alleviated by the trial court's discretion to exclude evidence that is more prejudicial than probative. See United States v. Sioux, 362 F.3d 1241, 1244 (9th Cir. 2004).

### 3. Analysis

Petitioner's claim regarding the admission of his prior sexual conduct does not merit habeas relief. First, Petitioner has failed to show that the state appellate court's decision upholding the constitutionality of § 1108 was contrary to established Supreme Court authority. As noted, the Supreme Court has not ruled that propensity evidence violates due process or equal protection. See Alberni, 458 F.4d at 866-67.

---

[5] FRE 414 changed the general rule of evidence which disallows admission of a defendant's prior crimes or acts to prove character and makes such evidence admissible with respect to child molestation cases.

United States District Court
Northern District of California

United States District Court
Northern District of California

Second, the state appellate court determined that the trial court properly analyzed the admission of Petitioner's prior sexual conduct under § 1108 and fulfilled its responsibilities under § 352 to weigh the probative value of the evidence against its prejudicial effect.  Answer, Ex. 6 at 11.  To the extent that Petitioner is arguing that state law was incorrectly applied, such a claim is unavailing.  Estelle, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations omitted).

Third, as explained above, the Ninth Circuit in LeMay held that Federal Rules of Evidence permit the admission of evidence of similar crimes in child molestation cases.  See 260 F.3d at 1024-25.  Though LeMay involves federal evidentiary rules, it remains instructive since both California Evidence Code § 1108 and FRE 414 similarly allow for the admission of prior crimes in child molestation cases.  As mentioned above, section 1108 is limited by section 352, which parallels FRE 403, thereby permitting a trial judge to exclude evidence when its probative value is substantially outweighed by its prejudicial effect.  Mejia, 534 F.3d at 1047 n.5 (noting that "California Evidence [Code §] 352 establishes a similar threshold for the propensity evidence introduced at [defendant's] trial, suggesting that under LeMay, [section] 352, like [FRE]s 402 and 403, safeguards due process and protected [defendant's] trial from fundamental unfairness").  As the California Supreme Court held in Falsetta, the requirement under section 352 to balance the prejudicial effect of the evidence against its probative value ensures that evidence admitted under section 1108 will not infringe on the right to a fair trial guaranteed under the Due Process Clause.  21 Cal. 4th at 913-921.

Finally, even assuming the propensity evidence was improperly admitted, the error did not have a "substantial and injurious effect" on the verdict.  See Plascencia v. Alameida, 467 F.3d 1190, 1203 (9th Cir. 2006) (applying Brecht, 507 U.S. at 623).  The current victim, D., testified regarding the molestation, and the jury credited that testimony.

11

RT 304-340.  Meanwhile, the jury rejected Petitioner's testimony that he did not commit the charged offenses.  RT 768-769.  While Petitioner claims this was a close case, he overestimates the persuasiveness of his alibi defense and any related inferences made by his defense witnesses, Dkt. 2 at 20-26, which were rejected by the jury as evidenced by its verdict.  Finally, there were permissible inferences the jury could draw from the testimony of the prior victims – J., S. and L.[6] – regarding Petitioner's prior sexual conduct with them. RT 90, 123-124, 130-135, 403-407.  Thus, the admission of the propensity evidence did not violate due process.  See Jammal, 926 F.2d at 920.

Accordingly, the state appellate court's determination that the trial court did not abuse its discretion in admitting such evidence was not contrary to, or an unreasonable application of Supreme Court precedent under AEDPA.  Therefore, this claim is DENIED.

**B.    ADMISSION OF CSAAS EVIDENCE**

Petitioner next challenges the admission of expert testimony on CSAAS.  At trial, Petitioner attempted to attack D's credibility based on evidence of his work schedule, the presence of others in the victim's home at all times the alleged offenses were to have occurred, and evidence showing D. had a motive to fabricate information after watching an Oprah episode on sexual harassment.  In turn, the prosecution argued that the CSAAS evidence was admissible to refute the attack on D.'s testimony generally, because it would explain not just D.'s delay in reporting the abuse, but also her secrecy, helplessness, and accommodation.  Answer, Ex. 2, vol. 4 (RT 3/19/2007 re Jury Trial) 447-451.

The trial court allowed the CSAAS evidence.  RT 451.  While the jurors did not reveal any myths and misconceptions surrounding the testimony of child abuse victims during voir dire, the trial court was doubtful that the jurors actually understood what these misconceptions might be.  RT 451-452.  The court added that its "observation has been that the . . . main defense is attacking the credibility of the complaining witness and she

---

[6] The prosecution called two police officers to relate the details of Petitioner's prior sexual conduct involving B. and L.  Answer, Ex. 2, vol. 3 (RT 3/15/2007 re Jury Trial) 191-214.

United States District Court
Northern District of California

has shown that there was some secrecy involved, helplessness . . . accommodation as well as delayed [reporting]." RT 452.

Before the expert witness testified, the trial court instructed the jury that the expert's testimony was "not evidence that the defendant committed any of the crimes charged against him" and that the jury may consider the testimony "in deciding whether or not [D's] conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of her testimony." RT 452-453. The jury was again instructed on this issue at the conclusion of the trial. CT 202.

Carl Lewis, an investigator for the district attorney's office, testified as an expert witness on CSAAS. RT 453. Investigator Lewis was aware of neither the facts nor the charges in the case. RT 460. He testified that his knowledge of CSAAS was based largely on the work of a psychiatrist named Dr. Roland Summit. RT 458-460. Investigator Lewis testified that sexually abused children often keep the facts secret, feel helpless, delay disclosure, accommodate the abuse, and sometimes retract their reports. RT 462. Investigator Lewis also testified that Dr. Summit emphasized that CSAAS was not "diagnostic" of sexual abuse, and that it would be improper to use it to determine whether sexual abuse had occurred in a particular case. RT 477. Instead, CSAAS is used "as a way of educating the trier of fact about conditions that exist in [child molestation] cases that are not commonly known to people." RT 488.

The trial court instructed the jury on the reason for admitting CSAAS testimony by reading a limiting instruction, CALCRIM 1193, which was given before the presentation of this evidence and again just before final jury deliberations. RT 452-453, CT 202. The trial court instructed the jury that the CSAAS evidence was "not evidence that the defendant committed any of the crimes charged against him." RT 453, CT 202. The instruction further stated that the jury "may consider this evidence only in deciding whether or not [D.'s] conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of her testimony." RT 453, CT 202.

Petitioner claims that the trial court violated his right to due process by admitting

the CSAAS evidence given that during voir dire the jurors did not demonstrate that they had any misconceptions about sexually abused children.  Specifically, Petitioner alleges "the risk of undue prejudice and jury confusion from such evidence 'substantially outweighed' its minimal probative value [ . . . and] the court's error was prejudicial to the defense since it exposed the jury to broad generalities about child sexual abuse victims which did not necessarily have anything to do with this case."  Dkt. 2 at 31, 33.  Petitioner asserts that the evidence was irrelevant because the victim did not show specific characteristics of CSAAS, the evidence was highly prejudicial, and the admission of such evidence denied him due process.  Id. at 33-34.

### 1.      State Court Decision

The California Court of Appeal affirmed the trial court's admission of expert testimony regarding CSAAS, because the testimony was not admitted to establish that Petitioner molested D., but was allowed "in order to assist the jury in understanding how [D.'s] actions were not 'inconsistent with having been molested.'"  Answer, Ex. 6 at 13-14 (quoting People v. Bowker, 203 Cal. App. 3d 385, 394 (1988)).  The court noted that D. did not immediately report the molestation and kept it a secret from adults for several years.  Id. at 14.  The foundation for the expert's testimony about CSAAS was "evidence of [D.'s] secrecy, helplessness, and delayed and conflicted reporting," which the defense elicited on cross-examination and highlighted during closing argument.  Id. at 14.  The court further found that the trial court properly gave the jury a limiting instruction on how to evaluate the CSAAS evidence.  Id.  Finally, the court made reference to California case law concerning CSAAS:

> The necessity for such evidence arises when the victim's credibility is attacked by a defendant's suggestion that the victim's conduct after the incident, e.g., a delay in reporting, is inconsistent with his or her testimony claiming molestation. (People v. Gilbert (1992) 5 Cal. App. 4th 1372, 1383.)  "[A]t a minimum the [CSAAS] evidence must be targeted to a specific 'myth' or 'misconception' suggested by the evidence. [Citation.]  For instance, where a child delays a significant period of time before reporting an incident or pattern of abuse, an expert could testify that such delayed reporting is not inconsistent with the secretive environment often created by an

abuser who occupies a position of trust.  Where an alleged victim recants his story in whole or in part, a psychologist could testify on the basis of past research that such behavior is not an uncommon response for an abused child who is seeking to remove himself or herself from the pressure created by police investigations and subsequent court proceedings. In the typical criminal case, however, it is the People's burden to identify the myth or misconception the evidence is designed to rebut.  Where there is no danger of jury confusion, there is simply no need for the expert testimony." (Bowker, supra, 203 Cal. App. 3d at pp. 393-394.)

However, "[i]dentifying a 'myth' or 'misconception' has not been interpreted as requiring the prosecution to expressly state on the record the evidence which is inconsistent with the finding of molestation.  It is sufficient if the victim's credibility is placed in issue due to the paradoxical behavior, including a delay in reporting a molestation." (People v. Patino (1994) 26 Cal. App. 4th 1737, 1744-1745.)

Id. at 12-13.  The court concluded that the evidence of CSAAS in Petitioner's case was narrowly tailored, and the jury was properly instructed as to the limited use of such evidence. Id. at 14.  Further, the court concluded that even if the CSAAS evidence had been excluded, it was "not reasonably probable that the jury would have reached a different result." Id. at 14-15.

### 2.      Federal Authority

The Ninth Circuit has held that CSAAS testimony is admissible in federal child sexual abuse trials, where the testimony concerns general characteristics of victims and is not used to opine that a specific child is telling the truth. Brodit, 350 F.3d at 991; United States v. Bighead, 128 F.3d 1329 (9th Cir. 1997) (per curiam); United States v. Antone, 981 F.2d 1059 (9th Cir. 1992).  In Brodit, the Ninth Circuit recognized that CSAAS evidence "describes various emotional stages, experienced by sexually abused children, that may explain their sometimes piecemeal and contradictory manner of disclosing abuse." 350 F.3d at 991.  The court observed that inconsistencies in a child's account of abuse, including delays in reporting, do not necessarily mean the child is lying. Id. Ultimately, the Brodit majority approved of the California Court of Appeal's holding in People v. Patino, 26 Cal. App. 4th 1737 (1994), that the use of CSAAS evidence in a child

United States District Court
Northern District of California

15

abuse case does not necessarily offend a defendant's due process rights.  <u>Brodit</u>, 350 F.3d at 991.  The Ninth Circuit concluded:

> [W]e have held that CSAAS testimony is admissible in federal child-sexual-abuse trials, when the testimony concerns general characteristics of victims and is not used to opine that a specific child is telling the truth.  (Citations omitted).  Although those cases did not address due process claims, both rejected the contention that CSAAS testimony improperly bolsters the credibility of child witnesses and precludes effective challenges to the truthfulness of their testimony.

<u>Id.</u> (citing <u>Bighead</u>, 128 F.3d 1329).

The Ninth Circuit has also rejected the contention that CSAAS testimony improperly bolsters the credibility of child witnesses and precludes effective challenges to the truthfulness of their testimony.  <u>See</u> <u>Bighead</u>, 128 F.3d at 1330-31; <u>Antone</u>, 981 F.2d at 1062.  In <u>Bighead</u>, the Ninth Circuit held that there was no abuse of discretion in the district court's admission of expert testimony about certain characteristics of child sexual abuse victims in the prosecution's rebuttal.  <u>See</u> 128 F.3d at 1330-31.  The court noted that the expert did not testify about the facts of the particular case, or about the particular victim, whom she had never examined.  <u>Id.</u>  Rather, the testimony was limited to evidence of 'delayed disclosure' and 'script memory' which were indicative of abused children as a class of individuals.  <u>Id.</u>  Further, in addressing a relevancy challenge, the court stated, "[the expert's] testimony had significant probative value in that it rehabilitated (without vouching for) the victim's credibility after she was cross-examined about the reasons she delayed reporting and about the inconsistencies in her testimony."  <u>Id.</u>  The court affirmed the defendant's conviction, holding that, the district court did not abuse its discretion in permitting the expert to testify.  <u>Id.</u>  The court also noted that, "[r]egardless, the jury was free to determine whether the victim delayed disclosure or simply fabricated the incidents."  <u>Id.</u> at 1331.

### 3.    Analysis

Petitioner's challenge to the admission of CSAAS evidence is foreclosed by <u>Brodit</u>.

As explained above, the Ninth Circuit has upheld the use of CSAAS evidence when, as in the instant case, it is used to explain the general characteristics of victims of sexual abuse and is not used to opine on the credibility of a specific child.  See id.  Moreover, the record shows that the trial court properly admonished the jury twice which ensured that the jury understood how to consider the CSAAS evidence, consistent with Brodit.  See id.  Brodit's constitutional limitations were upheld because the trial court's limiting instruction properly cautioned the jury that CSAAS evidence could only be used to show that D's testimony was not inconsistent with symptoms commonly experienced by abused children, and that it was offered in this case to rebut implied misconceptions that child abuse victims' delayed disclosure and accommodation indicate untruthfulness.  See id.  This use of CSAAS evidence comports with constitutional requirements.  In addition, Petitioner cites to no Supreme Court authority to support his claim that the trial court's decision to admit the CSAAS evidence violated his right to due process.

Petitioner contends that because D. did not exhibit specific characteristics of CSAAS, the evidence was more prejudicial than probative.  Dkt. 2 at 33-34.  However, to the contrary, the state appellate court found that there was evidence of D.'s "secrecy, helplessness and delayed and conflicted reporting . . . ."  Answer, Ex. 6 at 14.  As the state appellate court concluded, the defense challenged D's credibility by questioning the very accommodations the CSAAS testimony was elicited to explain.  Id.  In essence, the state appellate court acknowledged that the CSAAS evidence served to explicate the suggested inconsistencies in a child's account of abuse, namely, delayed disclosure and accommodation, and their credibility.  Id. at 13-14.  Such characteristics are not necessarily indicative of untruthfulness, but rather evidence of certain emotional stages experienced by sexually abused children.  See also Brodit, 350 F.3d at 991.  As set forth in Bighead, it necessarily follows that such testimony has significant probative value because it rehabilitates the victim's challenged credibility, based on apparent inconsistencies in testimony, delayed reporting, or any other established CSAAS symptoms.  See 128 F.3d at 1331.  In the end, the jury in Petitioner's case was "free to determine whether the victim

1   delayed disclosure or simply fabricated the incidents." See id.

2          Finally, the state appellate court found that Petitioner failed to demonstrate that the

3   admission of CSAAS had "'a substantial and injurious effect' on the verdict." Brecht, 507

4   U.S. at 623; Dillard, 244 F.3d at 767 (citations omitted).  While Petitioner argued

5   otherwise, the state appellate court determined that "D.'s testimony itself was substantial

6   evidence of the acts of molestation with which [Petitioner] was charged."  Answer, Ex. 6 at

7   15.  The state appellate court also reviewed the "entire record" and was "convinced that the

8   jury was not confused by, or improperly convinced of, D's credibility based upon Lewis's

9   testimony."  Id.  Thus, Petitioner fails to establish that the state appellate court's rejection

10   of this claim was contrary to, or an unreasonable application of, clearly established United

11   States Supreme Court precedent, nor that it was based upon an unreasonable determination

12   of the facts in light of the evidence presented.  See 28 U.S.C. § 2254(d)(1), (2).

13   Accordingly, this claim is DENIED.

14          C.      **DENIAL OF RIGHT TO PRESENT A DEFENSE**

15          Petitioner claims that even if the aforementioned alleged errors individually do not

16   justify relief, the cumulative effect of all errors "unfairly bolstered D.'s vague, generic

17   testimony" and prevented him from presenting a meaningful alibi defense.  Dkt. 2 at 38-

18   39.  He asserts that D.'s testimony "lacked any specific details, dates or distinguishing

19   characteristics as to individual acts."  Id. at 38.  He further argues that the "injection of

20   propensity and CSAAS evidence into a case otherwise based entirely on generic testimony

21   produced a 'perfect storm' capable of overpowering the jury's rationality."  Id. at 36.

22          **1.      State Court Decision**

23          The state appellate court rejected Petitioner's claim that the alleged cumulative

24   errors prevented a fundamentally fair trial on all counts.  Answer, Ex. 6 at 23.  The state

25   appellate court also specifically rejected Petitioner's due process claim that the trial court's

26   admission of D's "generic" testimony deprived him of his right to present a defense.  Id. at

27   17.  The state appellate court concluded it was bound by the California Supreme Court's

28   ruling in People v. Jones, 51 Cal. 3d 294 (1990), which affirmed child molestation

United States District Court
Northern District of California

18

convictions, even though evidence of guilt lacked specific reference to a time or place. Answer, Ex. 6 at 15-17.

Under California law, generic testimony of repeated acts of molestation, even if unspecified as to time and place, is sufficient to support a guilty verdict. Jones, 51 Cal. 3d at 321-22. Jones also concluded that generic testimony does not necessarily deprive a defendant of the "due process right to defend against the charges against him." Id. Acknowledging that "[c]hild molestation cases frequently involve difficult, even paradoxical, proof problems," the California Supreme Court held that generic testimony resulting in a conviction did not violate a defendant's due process rights. Id. at 305.

Here, in rejecting Petitioner's due process claim, the state appellate court found that D.'s testimony was sufficiently specific to satisfy requirements set forth in Jones, stating:

> D. was specific as to "the kind of act or acts committed," in that she stated that defendant touched her butt and vagina, put his mouth on her vagina, made her put her mouth and her hand on his penis. D. was also specific [as to] "the number of acts committed," in that she stated that defendant touched her more than one time on more than one day, and although she told him she did not like it, it happened again and again. Finally, D. described "the general time period in which these acts occurred," when she testified that the abuse began when she was 8-years-old and in third grade, and continued until she was 11 and almost done with fifth grade.

Answer, Ex. 6 at 16-17.

### 2.    Federal Authority

"The Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). The constitutional right to present a complete defense includes the right to present evidence, including the testimony of witnesses. See Washington v. Texas, 388 U.S. 14, 19 (1967). But the right is only implicated when the evidence the defendant seeks to admit is "relevant and material, and . . . vital to the defense." Id. at 16. Additionally, a violation of the right to present a defense does not occur any time such evidence is excluded, but rather only when its

United States District Court
Northern District of California

exclusion is "arbitrary or disproportionate to the purposes [the exclusionary rule applied is] designed to serve." Holmes, 547 U.S. at 324 (internal citation and quotation marks omitted). This is true even if the rule under which it is excluded is "respected[,] . . . frequently applied," and otherwise constitutional. Chambers v. Mississippi, 410 U.S. 284, 302 (1973)). If the "mechanical" application of such a rule would "defeat the ends of justice," then the rule must yield to those ends. Id. Still, "[o]nly rarely" has the Supreme Court held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence. Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (citing Holmes, 547 U.S. at 331 (rule did not rationally serve any discernable purpose)).

### 3.    Analysis

To the extent Petitioner is claiming that he was prejudiced by the cumulative effect of the foregoing asserted errors, such an argument is without merit. Petitioner has failed to show, as a threshold matter, that there were any errors of a constitutional magnitude committed during trial. As such, there can be no due process violation based on a theory of "cumulative" error. See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (holding where there are no errors, there can be no cumulative error). Therefore, the Court rejects any claim of cumulative error.

Petitioner also contends that he was deprived of a fair opportunity to defend himself because D. could not give specific details as to each incident that occurred, and the propensity and CSAAS evidence prejudiced the jury. However, the record reflects that, consistent with the requirements of due process, Petitioner had fair notice of each of the counts charged against him and he had a fair chance to challenge each charge during his trial. See Chambers, 410 U.S. at 294 (defendant must be given notice of the charges against him and a fair opportunity to defend against them). Although D. may not have provided details regarding each incident of sexual abuse, D. specified the type of conduct involved, the number and frequency of the acts, the general time period, and the locations in which they occurred. RT 303-307, 311-325, 329-333, 338-340. As explained by the

20

United States District Court
Northern District of California

United States District Court
Northern District of California

1    state appellate court, state law does not require more.  Answer, Ex. 6 at 16-17 (citing

2    Jones, 51 Cal. 3d at 316).  The California Supreme Court in Jones held that the absence of

3    specific evidence explaining the precise time, place, and circumstance of each incident of

4    sexual abuse does not mean there was insufficient evidence to support the convictions.

5    See 51 Cal. 3d at 316.  This Court is bound by the state appellate court's determination of

6    state law.  See Estelle, 502 U.S. at 67-68; see also Aponte v. Gomez, 993 F.2d 705, 707

7    (9th Cir. 1993) (federal courts are "bound by a state court's construction of its own penal

8    statutes").

9          In addition, Petitioner cites no clearly established Supreme Court precedent holding,

10   contrary to Jones, that charges or testimony in a child sexual abuse case are

11   constitutionally deficient when they fail to tie each alleged incident of abuse to a specific

12   date or event.  The court in Jones further noted that, even without information about

13   specific dates or circumstances of a particular incident, a defendant may still take

14   advantage of effective defenses.  See 51 Cal. 3d at 305.  For example, a defendant may

15   testify and deny the allegations, advance positive character evidence, and develop evidence

16   of the child's motive to lie.  Id. at 319-20.  Here, the record shows that Petitioner did, in

17   fact, develop such defenses *and* an alibi defense, which supports the conclusion that the

18   trial was fairly conducted.  The fact that they were unsuccessful does not prove a violation

19   of Petitioner's right to a fair trial and an adequate opportunity to defense.  Id.

20   Furthermore, other California federal courts have uniformly rejected claims alleging due

21   process violations based on generic testimony relating to alleged sexual abuse.  See, e.g.,

22   Aburto v. Clark, 2010 WL 4269537, at *8 (C.D. Cal. Aug. 9, 2010) (evaluating state

23   court's admission of generic evidence of sexual assault based on the standard set forth in

24   Jones and holding no due process violation); Love v. Lea, 2010 WL 3058979, at *5 (N.D.

25   Cal. Aug. 2, 2010) (same); Heller v. Mendoza-Powers, 2008 WL 4279545, at *6-7 (N.D.

26   Cal. Sept. 12, 2008) (same); Doughtie v. Scribner, 2007 WL 2669922, at *5-6 (E.D. Cal.

27   Sept. 7, 2007) (same).

28         Given Supreme Court precedent that generic testimony is sufficient to support a

21

conviction for sexual offenses, it cannot be said that the state appellate court's rejection of Petitioner's due process claim was contrary to, or involved an unreasonable application of clearly established Supreme Court law.  Accordingly, this claim is DENIED.

**IV.    CERTIFICATE OF APPEALABILITY**

No certificate of appealability is warranted in this case.  For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's claims debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

**V.    CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.    The Petition for Writ of Habeas Corpus is DENIED as to all claims, and a certificate of appealability will not issue.  Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2.    The Clerk of the Court shall enter judgment, terminate all pending matters, and close the file.

**IT IS SO ORDERED.**

Dated:  7/21/2014

SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\HC.11\Nuno2446.denyHC-final071714.docx

United States District Court
Northern District of California